UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| STATIC CONTROL COMPONENTS, INC., <br><br> PLAINTIFF/COUNTERCLAIM DEFENDANT <br><br> v. <br><br> LEXMARK INTERNATIONAL, INC., <br><br> DEFENDANT/COUNTERCLAIM PLAINTIFF <br><br> v. <br><br> WAZANA BROTHERS INTERNATIONAL, INC. d/b/a MICRO SOLUTIONS ENTERPRISES <br><br> COUNTERCLAIM DEFENDANT <br><br> v. <br><br> PENDL COMPANIES, INC. <br><br> COUNTERCLAIM DEFENDANT <br><br> v. <br><br> NER DATA PRODUCTS, INC. <br><br> COUNTERCLAIM DEFENDANT | WESTERN DISTRICT OF KENTUCKY CIVIL ACTION NO. 3:06mc42-S <br><br><br> Civil Action No. 04-CV-84-GFVT <br> Pending in United States District Court <br> Eastern District of Kentucky <br> Honorable Gregory F. Van Tatenhove |

### MOTION TO QUASH LEXMARK'S SUBPOENA ON
### ITS OPPOSING PARTY'S TRIAL COUNSEL

Stites & Harbison, PLLC ("Stites & Harbison"), by counsel and pursuant to Federal Rule 45(c), moves this Court to quash the October 18, 2006, subpoena that was served on it by Lexmark International, Inc. ("Lexmark). The subpoena seeks deposition testimony and documents from Stites & Harbison related to its work as *trial counsel* for Pendl Companies, Inc. ("Pendl"), a party Lexmark is suing in the United States District Court for the Eastern District of

Kentucky (the "Eastern District"). The subpoena is Lexmark's unabashed attempt to discover trial strategy and work product from *all* of its opposing parties' trial counsel in order to gain an advantage in that litigation.[1] Under Rule 45(c), it must be quashed and Stites & Harbison awarded its legal fees.

## FACTS

### A. Lexmark Sued Pendl And Others In The Eastern District Of Kentucky.

Stites & Harbison brings this motion in this Court because Lexmark issued its subpoena on behalf of this Court. *See* Fed. R. Civ. P. 45(c)(1). The underlying litigation is pending in the United States District Court for the Eastern District of Kentucky, before the Honorable Gregory F. Van Tatenhove. It is the consolidation of two actions that have been pending, respectively, since 2002 and 2004. One of the actions was the subject of the Sixth Circuit's opinion in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) (vacating preliminary injunction and remanding for further proceedings).[2]

The actions concern certain laser printer toner cartridges manufactured by Lexmark. Lexmark makes and sells laser printers and then attempts to "license" toner cartridges for those printers by means that include affixing fine-print labels to the cartridges in an effort to declare unilaterally that anyone who opens the cartridge box or uses the cartridge is a patent licensee of Lexmark, bound by the label "license" to use the cartridge only once and then return it to

---

[1] In addition to this subpoena, Lexmark has issued *sixteen* identical subpoenas to its opposing counsel in the Eastern District of Kentucky, the District of Colorado, the District of D.C., the District of Massachusetts, the Southern District of New York, the Southern District of Ohio, the Eastern District of Wisconsin, and the Northern and Central Districts of California.

[2] Stites & Harbison does not wish to burden the Court with an exhaustive collection of exhibits supporting this general background information. Stites & Harbison therefore submits as general support for this summary of the nature of the case Static Control's February 24, 2004 Complaint for Declaratory Judgment (attached as Exh. 1) and Lexmark's November 8, 2004 Second Amended Answer and Counterclaims (attached as Exh. 2).

Lexmark. The object of this scheme is to prevent used cartridges from falling into the hands of companies known as "remanufacturers," which recycle used cartridges by repairing them and refilling them with toner so that they can be used again – at a price far below that of buying a new Lexmark cartridge. There are thousands of such remanufacturers in the United States.

Lexmark's adversaries in these actions are three specific remanufacturers – NER Data Products, Inc.; Pendl Companies, Inc. ("Pendl"); and Wazana Brothers International, Inc. (collectively, the "Remanufacturers") – along with the industry's largest supplier of parts to such remanufacturers, Static Control.

In broad terms, Static Control and the Remanufacturers contend that Lexmark's "licensing" scheme entails false advertising, constitutes patent misuse and is otherwise improperly anti-competitive, while Lexmark contends that Static Control and the Remanufacturers are willfully infringing Lexmark's patents, and/or willfully inducing the infringement of Lexmark's patents, by enabling consumers to re-use toner cartridges that Lexmark alleges were licensed to those consumers for only one use.

### B. Pendl Retained Stites & Harbison As Trial Counsel To Defend Lexmark's Lawsuit.

After receiving Lexmark's Counterclaim, Pendl retained the law firm of Stites & Harbison as trial counsel for its defense. *See* Declaration of Joel Beres, attached as Exh. 3, at ¶ 2. Stites & Harbison had never performed legal work of any kind for Pendl before this retention. *Id.* at ¶ 3. Instead, it was retained and has served solely as ***trial counsel***. *Id.* at ¶ 4. In fact, the retention agreement between Stites & Harbison and Pendl limits Stites & Harbison's representation to defending Lexmark's suit. *Id.* at ¶ 5.

As trial counsel, Stites & Harbison has never provided Pendl advice as to validity of any Lexmark patent. *Id.* at ¶ 6. It has never provided advice on the validity of Mr. Becker's advice

-3-

in 1999, which forms the basis for Pendl's advice of counsel defense. *Id.* at ¶ 7. Instead, each and every communication between Stites & Harbison and Pendl has been limited to discussions of litigation or trial strategy. *Id.* at ¶ 8. Each and every document provided to Pendl has similarly dealt solely with such litigation and trial strategy. *Id.* at ¶ 9.

### C. Lexmark Has Subpoenaed Stites & Harbison Seeking Pendl's Trial Strategy.

Despite knowing its role as trial counsel, Lexmark subpoenaed Stites & Harbison – *as well as each and every other opposing litigant's litigation counsel* – on October 18, 2006. (*See* Subpoena, attached as Exh. 4.) The subpoena demanded production of documents nine days later and deposition testimony from Pendl's trial counsel shortly thereafter. (*Id.* at 2.) The subpoena demands all privileged communication between Stites & Harbison and Pendl, and all work product produced by Stites & Harbison during the litigation. Its requests include the following:

- All communications and work product involving antitrust claims made against Lexmark. (*Id.* at Request 6.)

- All communications and work product involving contract law concerns related to Lexmark. (*Id.* at Request 7.)

- All communications between Pendl and its trial counsel concerning Lexmark's printer/toner cartridge program. (*Id.* at Request 4.)

- All communications or documents discussing communications between trial counsel and Pendl in any way "relating" to the topic of patent infringement. (*Id.* at Request 2, 5, 9)

- All communication and work product concerning Pendl's decision to invoke the advice of counsel defense in its complaint. (*Id.* at Request 3.)

- All documents – whether work product or not – "relating to" whether Pendl's actions have violated any Lexmark patent. (*Id.* at Request 1.)

As a basis for subpoenaing trial counsel, Lexmark has suggested that Pendl's assertion of the "advice of counsel" defense has waived privilege over certain communications reflecting

-4-

Pendl's state of mind concerning the patent infringement claims. However, Lexmark's actual intentions are apparent from the fact that at least three topics in its subpoena to trial counsel *do not address or relate to such claims*. (*See* Request 6 (antitrust claims); Request 7 (contract claims); Request 4 (program claims).) Instead, Lexmark's subpoena is an attempt to "pillage" Pendl's litigation files and gain an advantage before the Eastern District. It should not be allowed to do so.

## ARGUMENT

I. **The Subpoena Must Be Quashed As It Seeks Information Protected By The Attorney-Client Privilege And Work-Product Doctrine.**

Rule 45 provides that a Court ***must*** quash or modify a subpoena that requires disclosure of privileged or other protected material. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii). This protection applies to subpoenas for production of documents as well as the testimony of witnesses. *Id.* A client has the right to assert this claim when its attorney is subpoenaed, and the attorney independently has the right to assert it in favor of his client. *See Estate of Yaron Ungar v. Palestinian Authority*, 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005) (finding subpoena on counsel's documents required a court to "quash, rather than modify, the subpoena under Rule 45(c)"). Stites & Harbison is invoking that privilege as to each request and deposition topic in Lexmark's subpoena.

Each of Lexmark's subpoena requests and topics demand that Stites and Harbison – in its role as trial counsel – divulge its client's privileged communications and work product. (*See, e.g.*, Requests 1-7 (demanding all communications and documents between trial counsel and client.) The requests are not tailored for discovery of non-privileged information; indeed, they specifically seek privileged information related to each and every claim asserted in the litigation. Lexmark should know such communications are privileged.

PE147:00PE1:557549:2:LOUISVILLE

Further, Pendl has not waived any privilege over communications with its trial counsel or work product produced by trial counsel by asserting the advice of counsel defense. Waiver created by the advice of counsel defense does not extend to litigation documents created in anticipation of, or for use at, trial. *See Intex Recreation Corp. v. Metalast*, Civ. No. 01-1213 (JDB), 2005 U.S. Dist. LEXIS 10149, at *10 (D.D.C. March 2, 2005). In fact, many courts hold that the waiver applies only to communications and documents created before the filing of a lawsuit; communications and documents created thereafter retain their privilege. *See Dunhall Pharms. v. Discus Dental*, 994 F.Supp. 1202, 1206 (C.D. Cal. 1998) ("Once the lawsuit is filed, the waiver of work product protection ends."); *Motorolla v. Vosi Techs.*, 2002 U.S. Dist. LEXIS 15655 at *2 (N.D. Ill. 2002). Such a limitation "follows the enhanced interest" in protecting a party against wholesale "disclosure of trial strategy and planning." *Dunhill*, 994 F.Supp. at 1206.

Some courts find that the waiver extends beyond the filing of the lawsuit. These courts nevertheless limit post-filing discovery to ***non-litigation counsel***. They continue to protect litigation counsel and apply the privilege to their advice. *See Tivo v. Echostar*, Civ. No. 2:04-CV-1, 2005 U.S. Dist. LEXIS 42481, at **18-19 (E.D. Tex. Sept. 26, 2005) (denying discovery into opinions by litigation counsel). Even courts applying the most liberal and expansive form of waiver still protect litigation files, limiting any production to litigation counsel opinions that contradict the client's previous patent opinions. *See Intex*, 2005 U.S. Dist. LEXIS at *15. All of these interpretations stand for the general premise that regardless of court's interpretation of waiver, a party cannot – under the guise of discovery pursuant to an advice of counsel defense – "pillage" its opponent's litigation files. *In re Echostar*, 448 F.3d 1294, 78 USPQ2d 1676, at 1682 (Fed. Cir. 1996). That is precisely and transparently what Lexmark is attempting to do, by

-6-

PE147:00PE1:557549:2:LOUISVILLE

seeking documents and testimony from litigation counsel on topics wholly unrelated to the advice of counsel defense

As noted, Stites & Harbison has served solely as litigation counsel, and has never provided Pendl an opinion on the validity or infringement or any patent involved. (Exh. 3 at ¶¶ 2-6.) Stites & Harbison has further never offered an opinion as to the validity of Mr. Becker's opinion letter to Pendl, much less disagreed with it. (*Id.* at ¶ 7.) Instead, it has solely provided advice concerning litigation and trial strategy. (*Id.* at ¶¶ 8-9.) Requiring production from Stites and Harbison would therefore be contrary to case law concerning potential waiver pursuant to the advice of counsel defense.

## II. The Subpoena Should Be Quashed As It Fails To Meet Mandatory Prerequisites For Deposing Opposing Counsel.

The subpoena also seeks to take the deposition of Stites & Harbison – Lexmark's opposing litigation counsel – despite the fact that Pendl has not relied on any advice from Stites & Harbison relating to the validity of any patent. Depositions of opposing counsel are disfavored. *RESQNET.com v. Lansa, Inc.*, 59 Fed. R. Serv. 3d (Callaghan) 122, 2004 U.S. Dist. LEXIS 13579, at * 5 (S.D.N.Y. July 23, 2004) (quoting *United States v. Yonkers Bd. Of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)). Even "a deposition of counsel limited to relevant and non-privileged information risks disrupting the attorney-client relationship and impeding the litigation." *Id.* (citing *Alcorn Labs v. Pharmacia Corp.*, 225 F.Supp. 2d 340 (S.D.N.Y. 2002)). Taking the deposition of opposing counsel not only "lowers the standards of the profession," but also "detracts from the quality of client representation." *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987). Counsel should instead be free to devote his or her time and efforts to preparing the client's case "without fear of being interrogated by his or her opponent." *Id.*

PE147:00PE1:557549:2:LOUISVILLE

To address these concerns, the Sixth Circuit has adopted the strict test announced by the Eight Circuit in *Shelton*. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628-29 (6th Cir. 2002). The *Shelton* test first states that opposing counsel cannot be deposed if the information being sought is privileged. *Id.* Where the information sought is non-privileged, opposing counsel may still not be deposed unless (1) "no other means exists to obtain the information" and (2) "the information is crucial to the preparation of the case." *Id.* (citing *Shelton*, 805 F.2d at 1327).

Lexmark cannot meet any of these prerequisites. First, the information sought is privileged, as no waiver between Stites & Harbison and Pendl has occurred. *See* II, *infra*. Second, Lexmark cannot prove that no other means exist to discover the information. Second, there is certainly another means by which to discover any non-privileged information: Lexmark can simply depose Pendl. Discovering the information from an alternate source is therefore not only possible, but convenient, as Pendl is a party whose deposition can be easily noticed. Third, Lexmark has not and cannot show that deposing Stites & Harbison is "crucial" to its case. Discovering opposing counsel's trial strategy is not appropriate, much less "crucial."

### III. The Subpoena Should Be Quashed Because It Does Not Provide A Sufficient Response Time, Requires Compliance Out Of This Court's Jurisdiction, Is Overly Broad, Unduly Burdensome, And Seeks Duplicative Documents.

The subpoena should further be quashed because of numerous other deficiencies. First, it allows only nine days for compliance. (Exh. 4 at 2.) Under Rule 45(c), this does not constitute a reasonable time for compliance. *See* Fed. R. Civ. P. 45(c)(3)(i) (requiring reasonable time for compliance).

Second, the subpoena is overly broad and unduly burdensome. For instance, it requests all documents and testimony "relating to" the "subject matter" of a letter from August, 1999. This request is breathtakingly vague, susceptible to being interpreted to include all statutes and

-8-

case law, as well as every document ever written on patent infringement. As such, the subpoena is overly burdensome and should be quashed. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv) (quashing subpoena for undue burden).

Finally, the seeks duplicative documents already sought from the appropriate party – Pendl. Allowing an opposing litigant to serve discovery on a party and then subpoena its opposing counsel for the same documents is wasteful, and harassing. Indeed, it is taxing not only the Eastern District's resources where the suit is ongoing, but now this Court's time as well. For all these reasons enumerated under Rule 45(c), the subpoena should be quashed.

## IV.     Stites & Harbison Should Be Awarded Attorney Fees.

Rule 45(c) provides that a party and its attorney issuing and serving a subpoena "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Moreover, the "court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee." *Id.*

Any serious consideration of the attorney-client privilege should have put Lexmark on notice that its document requests and deposition topics were impermissible. *See* I, *infra*. Furthermore, any serious consideration of the Sixth Circuit's prerequisites for deposing litigation counsel should have put Lexmark on notice of the impropriety of their subpoena. *See* II, *infra*. Finally, regardless of whether Lexmark may believe it has appropriate grounds to seek certain documents based on Pendl's assertion of the advice of counsel defense, it is undeniable that it has sought documents and testimony far exceeding that topic. Given Lexmark's unnecessarily harassing and careless approach to an issue that should be handled respectfully and carefully, Pendl should be awarded its attorney's fees in response to this motion.

PE147:00PE1:557549:2:LOUISVILLE

## CONCLUSION

For all of the foregoing reasons, this Court should quash Lexmark's subpoena to Stites & Harbison. Seeking all privileged material on all claims related to a litigation is not only contrary to law, but also reprehensible and detrimental to the litigation process. Pendl should be awarded its reasonable attorney's fees for Stites & Harbison's response to the subpoena.

/Joel T. Beres/
Joel T. Beres
Andrew G. Beshear
William Charles Ferrell
Jennifer L. Kovalcik
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
STITES & HARBISON, PLLC
COUNSEL FOR DEFENDANT

## CERTIFICATION

I hereby certify that a copy of the foregoing was filed electronically this 30th day of October 2006, via U.S. Mail, postage prepaid to:

Jason S. Shull
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606

BY: /Joel T. Beres/
One of Counsel for Pendl Companies, Inc.