Exhibit 4

Issued by the
# United States District Court
WESTERN DISTRICT OF KENTUCKY

SUBPOENA IN A CIVIL CASE

Static Control Components, Inc.
   Plaintiff/Counterclaim Defendant

v.

Lexmark International, Inc.
   Defendant/Counterclaim Plaintiff

Civil Action No. 04-CV-84-GFVT
Pending in United States District Court,
Eastern District of Kentucky
Honorable Gregory F. Van Tatenhove

v.

Wazana Brothers International, Inc.
d/b/a Micro Solutions Enterprises
   Counterclaim Defendant

v.

Pendl Companies, Inc.
   Counterclaim Defendant

v.

NER Data Products, Inc.
   Counterclaim Defendant

To: **Stites & Harbison PLLC**
    Attn: Joel T. Beres
    400 West Market Street, Suite 1800
    Louisville, Kentucky 40202

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

| _X_ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case pursuant Fed. R. Civ. P. 45. See Exhibit B for the deposition topics. ||
|---|---|
| PLACE OF DEPOSITION<br>Courtyard by Marriott<br>100 South 2nd Street<br>Louisville, Kentucky 40202<br>(or other mutually agreeable location) | DATE AND TIME<br>November 2, 2006 at 9:00 a.m. |
| _X_ YOU ARE COMMANDED to produce and permit inspection and copying of documents or things at the place, date, and time specified below. See Exhibit A for the requests for documents and things. ||
| PLACE<br>Banner & Witcoff, Ltd.<br>10 South Wacker Drive<br>Suite 3000<br>Chicago, Illinois 60606<br>(or other mutually agreeable location) | DATE AND TIME<br>October 27, 2006 at 9:00 a.m. |
| ___ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below ||
| PREMISES | DATE AND TIME |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant)<br>Attorney for Defendant/Counterclaim Plaintiff, Lexmark International, Inc. | Date<br>October 18, 2006 |
|---|---|

Issuing Officer's Name, Address, and Phone Number
Jason S. Shull, Banner & Witcoff, Ltd., 10 South Wacker Drive, Suite 3000, Chicago, Illinois, 60606, (312) 463-5000

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: _____
    DATE

Signature of server: _____

Address of server: _____

# Rule 45, Federal Rule of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

    (2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

    (2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

    (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

        (I) fails to allow reasonable time for compliance;

        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

        (iv) subjects a person to undue burden.

    (B) If a subpoena

        (I) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

    (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45 and directed by the subpoena attached hereto, which has been issued by the Western District of Kentucky, you are requested to produce all documents and things within the scope of the following definitions and descriptions that are within your possession, custody, or control. With respect to documents and things withheld under a claim of privilege, you are required under Rule 45 to describe the nature of the documents and things withheld in a manner sufficient to enable the demanding party to contest the claims.

### DEFINITIONS

1. The term "Stites & Harbison" means Stites & Harbison PLLC, its past and current employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Stites & Harbison is or was doing business, its predecessors, directors, officers, employees, agents, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Joel T. Beres, Jack A. Wheat, Jennifer L. Kovalcik, William Charles Ferrell, Jr., and James R. Michels.

2. The term "Lexmark" means Lexmark International, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name under which Lexmark is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

3. The term "Pendl" means Pendl Companies, Inc., as well as its employees, attorneys, licensees, agents, representatives, and investigators, as well as any company name

under which Pendl is or was doing business, its predecessors, parents, sisters, subsidiaries, divisions, directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, licensors, licensees, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control, including, but not limited to, Robert D. Becker (the author of the letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1)).

4. The term "Lexmark's Patents" means U.S. Patent Nos. 5,634,169, 5,707,743, 5,758,231, 5,758,233, 5,768,661, 5,802,432, 5,804,114, 5,874,172, 5,875,378, 5,880,244, 5,952,442, 5,995,772, 6,009,285, 6,009,291, 6,117,557, 6,160,073, 6,300,025, 6,397,015, 6,459,876, 6,487,383, 6,492,083, D399,249, and D458,300.

5. The term "Prebate Program" means and refers to Lexmark's Prebate program for the sale of certain Lexmark toner cartridges that are sold at a special price subject to a restriction that the cartridge be used only once and returned only to Lexmark. Lexmark's Prebate program was renamed the "Lexmark Return Program" on April 22, 2003.

6. The terms "document" or "documents" mean anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including, without limitation, every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, electronic or electrical means whatsoever, including without limitation, memoranda, correspondence, electronic mail, electronic data compilations, notes, books, records, papers, pamphlets, brochures, circulars, advertisements, specifications, blueprints, maps, plats, surveys, drawings, sketches, graphs, charts, plans, laboratory or

engineering reports, notebooks, worksheets, reports, lists, analyses, summaries, ledger accounts, audits, inventories, tax returns, financial statements, profit and loss statements, cash flow statements, balance sheets, annual or other periodic reports, prospectuses, registration, solicitations, minutes, appointment books, diaries, telephone bills and toll call records, expense reports, commission statements, itineraries, agenda, payroll records, checkbooks, canceled checks, receipts, contracts, agreements, instrument assignments, applications, offers, acceptances, proposals, financing statements, documents of title, appraisals, purchase orders, invoices, bills of lading, written memorials of oral communications, forecasts, photographs, photographic slides or negatives, films, filmstrips, x-rays, video or audio tapes and recordings.

7. The terms "thing" or "things" mean any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

8. The term "relating to" means alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

9. "And," "or," as well as "and/or," shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

10. The terms "any" and "all" shall be read to mean each and every.

11. The term "person" means a natural or judicial person, including any corporation, proprietorship, partnership, agency, or business association of any type.

## INSTRUCTIONS

1. In producing documents and things responsive to these requests, Stites & Harbison shall furnish all documents and things within its possession, custody or control, as they

are kept in the ordinary course of business or they shall be organized and labeled to correspond with the document requests to which they are responsive, regardless of whether these documents and things are possessed directly by Stites & Harbison or by its present or past agents, employees, companies, licensees, representatives, investigators, or attorneys.

2. If the attorney-client privilege or work product immunity is asserted as to any document or thing, or if any document or thing is not produced in full, produce the document or thing to the extent the request for production is not objected to, and, in so doing, state the following:

    (a) the specific ground(s) for not producing the document or thing in full;

    (b) the basis for such a claim of privilege or immunity and the facts supporting that basis; and

    (c) fully identify the information or material contained within the document or thing for which such privilege or immunity is asserted, including as applicable, the name of any document or thing; its date; the name, address and job title of each author or other person involved in its preparation, each addressee and each person to whom a copy of the document or thing has been sent or received; and the general nature of the document or thing (e.g., memoranda, letter).

3. Where an objection is made to a request, state all grounds upon which Stites & Harbison's objection is based.

4. If, after exercising due diligence, Stites & Harbison is unable to determine the existence of any documents or things falling within a specific request, Stites & Harbison shall so state in its written response.

5. With respect to each of the following requests, Stites & Harbison shall identify and/or produce all documents which are known to it or which can be located or discovered by Stites & Harbison through diligent effort on Stites & Harbison's part, including, but not limited to, all documents which are in the business or personnel files of Stites & Harbison employees or contained or stored within a computer in the possession of Stites & Harbison or its representatives, attorneys, or accountants, or accessible to Stites & Harbison, its employees, or its representatives, attorneys, or accountants.

6. Whenever used herein, the singular shall be deemed to include the plural and the plural shall be deemed to include the singular and the disjunctive shall be deemed to include the conjunctive and the conjunctive shall be deemed to include the disjunctive so as to elicit all information potentially responsive to the request for production and all of its context.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**Request No. 1:** All documents and things relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999 (attached hereto as Tab 1).

**Request No. 2:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Request No. 3:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Request No. 4:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Request No. 5:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to communications with Pendl regarding the infringement of Lexmark's Patents.

**Request No. 6:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Request No. 7:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Request No. 8:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Request No. 9:** All documents and things that reflect, embody, or discuss communications between Stites & Harbison and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

## EXHIBIT B

The definitions set forth in Exhibit A are incorporated herein by reference.

### DEPOSITION TOPICS

**Deposition Topic No. 1:** Communications between Stites & Harbison and Pendl relating to the subject matter discussed in Robert Becker's letter to Randy Pendl of August 26, 1999.

**Deposition Topic No. 2:** Communications between Stites & Harbison and Pendl relating to Pendl's advice of counsel defense, including Pendl's decision to invoke the defense.

**Deposition Topic No. 3:** Communications between Stites & Harbison and Pendl relating to the scope, validity, and/or enforceability of Lexmark's Prebate Program.

**Deposition Topic No. 4:** Communications between Stites & Harbison and Pendl relating to the infringement of Lexmark's Patents.

**Deposition Topic No. 5:** Communications between Stites & Harbison and Pendl relating to the antitrust implications, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 6:** Communications between Stites & Harbison and Pendl relating to the contract law concerns, *vel non*, of Lexmark's Prebate Program.

**Deposition Topic No. 7:** Communications between Stites & Harbison and Pendl relating to the issue of whether Pendl's remanufacturing of used toner cartridges constitutes permissible repair.

**Deposition Topic No. 8:** Communications between Stites & Harbison and Pendl relating to the legal and/or factual bases set forth in Robert Becker's letter to Randy Pendl of August 26, 1999.

# SEALED EXHIBIT